UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

WALTER SOBIERAJ,                                    1:17-CV-00616 JLS (MJR)

             Plaintiff,                    REPORT AND
                                                        RECOMMENDATION

    v.

UNITED STATES,

             Defendant.

———————————————————

## INTRODUCTION

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, for all pretrial matters and for hearing and reporting on dispositive motions for consideration by the District Court.[1]  Before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. Nos. 21-24)  For the following reasons, it is recommended that defendant's motion for summary judgment be granted.

## PROCEDURAL BACKGROUND

This lawsuit arises from an incident on January 8, 2015 where plaintiff Walter Sobieraj slipped and fell in the parking lot of a United States Postal Service's office located at 5325 Sheridan Drive, Williamsville, New York (the "Williamsville Post Office").  Plaintiff's complaint, filed on July 6, 2017, asserts a negligence claim against defendant

---

[1] This case was initially assigned to the Honorable Lawrence J. Vilardo, who referred the matter to the undersigned to handle all pretrial matters and report on all dispositive motions.  (Dkt. No. 5)  On February 14, 2020, this case was reassigned to the Honorable John L. Sinatra, Jr.  (Dkt. No. 32)

United States pursuant to the Federal Tort Claims Act.[2]  (Dkt. No. 4)  Defendant filed an answer on September 22, 2017.  (*Id.*)  Following a period of discovery, defendant filed the instant motion for summary judgment.  (Dkt. Nos. 21-24)  Plaintiff filed a response (Dkt. No. 25), defendant filed a reply (Dkt. Nos. 26-28), and oral argument was heard before this Court on September 9, 2019.

## RELEVANT FACTS

### *Plaintiff's Fall*

Sobieraj visited the Williamsville Post Office on the morning of January 8, 2015 to drop-off packages.[3]  (Dkt. No. 23, ¶1; Dkt. No. 25-1, ¶2)  He parked, exited his vehicle, and proceeded into the building without incident.  (Dkt. No. 23, ¶2; Dkt. No. 25-1, ¶2)  Sobieraj had no difficulty traversing the ground between where he parked and the entrance to the Williamsville Post Office.  (Dkt. No. 23, ¶2; Dkt. No. 23-1, Exh. 1, pg. 13)  While inside, Sobieraj transacted his business and did not notify employees of any problems with snow or ice in the parking lot or surrounding sidewalks.  (Dkt. 23, ¶¶3-4)  On the way back to his vehicle, and walking the same path as when he entered, Sobieraj stepped off the curb of the sidewalk, into the parking lot, and fell on the ground.  (Dkt. No. 23, ¶7; Dkt. No. 25-1, ¶3)  After he fell, Sobieraj went back into the Williamsville Post Office and informed employees that he had fallen in the parking lot.  (Dkt. No. 23, ¶8; Dkt. No. 25-1, ¶4)  Sandra Berger, a postal supervisor working at the Williamsville Post Office that day, received the report of Sobieraj's fall.  (Dkt. No. 23-1, pg. 32; Dkt. No. 25-1, ¶7)  She took pictures of Sobieraj, conducted an investigation and prepared an accident report.  (Dkt. No. 23-1, Exhs. 5 and 6)  The report indicated that

---

[2] 28 U.S.C. §§1346(b), 2671, *et seq.*
[3] The facts described herein are taken from the pleadings, motion papers, statements of undisputed facts, and exhibits filed in this lawsuit.

the accident took place at 10:25 a.m.  (*Id.*)  Upon returning to his vehicle after reporting the incident, Sobieraj took pictures of the area where he fell.  (Dkt. No. 23, ¶9; Dkt. No. 25-1, ¶¶5-6)

### *Weather Conditions*

During his deposition, Sobieraj testified that when he arrived at the Williamsville Post Office, the temperature was freezing, there was snow on the ground, and it was not windy.  (Dkt. No. 23-1, pg. 12)  He described the weather as "wintery."  (*Id.*)   When asked whether snow was falling at the time, he stated "I believe not."  (*Id.*)  Sobieraj was later shown two of the pictures he took after his fall and asked if they refreshed his recollection as to whether snow was falling at the time of his accident.  (Dkt. No. 23-1, pgs. 17-19)  He answered, "[w]ell, yeah, this – obviously there is snow on my vehicle, yeah, and there is snow there, correct."  (*Id.*)  Sobieraj also acknowledged that one of the photographs depicted snow falling from the sky.  (Dkt. No. 23-1, pg. 18)  Indeed, the photographs taken by Sobieraj show snow flurries falling from the sky and a light accumulation of snow on both the ground and on Sobieraj's vehicle.  (Dkt. No. 23-1, Exh. 3)

On the accident report completed on January 8, 2015, Berger listed both the weather conditions and the surface conditions as "snow."  (Dkt. No. 23-1, Exh. 6)  During her deposition, Berger testified that the reason she listed the weather and surface conditions as "snow", was that there was some light snow falling at the time of the accident.  (Dkt. No. 27-1, pg. 9)  Paragraph 40 of the accident report requested a description of any "weather factors" that contributed to the accident.  (Dkt. No. 23-1, Exh. 5)  In response, Berger indicated "snow" and also that "the parking lot had been

plowed and salted just hours earlier but there had been a light snow between then and the time of the incident." (*Id.*)  Berger testified that she did not specifically remember, at the time of her deposition, if there was snow or ice on the exterior of the premises or pavement when she arrived to work on January 8, 2015, nor could she remember whether it was snowing at the time she conducted her investigation of the accident. (Dkt. No. 25-1, pgs. 22, 26, 31)  In fact, Berger testified that she did not have any independent recollection of the events on January 8, 2015 other than the information contained in the accident report.  (Dkt. No. 23-1, pg. 32)

Defendant submits an affidavit and expert report from Michael Cejka as to the weather conditions at the Williamsville Post Office on January 8, 2015.[4]  (Dkt. Nos. 22 and 22-1)  In preparing the report, Cejka studied hourly surface weather observations from the Buffalo-Niagara International Airport (the "Buffalo Airport") on January 8, 2015. (Dkt. No. 22-1)  He opines that the distance from the accident site at the Williamsville Post Office to the observation site at the Buffalo Airport is 2.6 miles, and therefore the weather at the observation site is highly representative of conditions at the accident site. (*Id.*)  Cejka states that it was very cold on January 8, 2015, with a maximum temperature of 15 and a minimum temperature of 5 above zero. (*Id.*)  Data from the Buffalo Airport reflected that a light snow fell at 9:23 a.m., became heavy at 10:18 a.m., moderate at 12:52 p.m., and then light again at 1:09 p.m. (*Id.*)  Also, hourly precipitation data from January 8, 2015 indicated that a total of two inches of snow was recorded when a snow squall shifted northward across Erie County between the hours of 10:00

---

[4] Cejka has a Bachelor's Degree in Meteorological Science, is a member of the America Meteorological Society, and is a long-time broadcast meteorologist in the Buffalo broadcast market.  (Dkt. No. 22)  He has extensive experience in the analysis and forecasting of weather in Western New York.  (*Id.*)

a.m. to 12:00 p.m., and that an additional two inches was measured between 10:54 a.m. and 11:54 a.m. (*Id.*)

In addition to the data from the Buffalo Airport, Cejka explains that a Special Weather Statement issued by the Buffalo National Weather Service at 8:15 a.m. on January 8, 2015 indicated that "a lake effect snow band capable of producing snowfall rates of up to one inch per hour [would] move into the Buffalo Southtowns at 9 am and the Buffalo metro area between 9:30 and 10 a.m." (*Id.*) The Special Weather Statement was updated at 10:15 a.m. to state that a "lake effect snow band capable of producing snowfall rates of up to 2" per hour...and visibility of a half mile or less was located across the Buffalo metro area and [would] move slowly north through noon", and would affect Amherst, Clarence, Williamsville, and Harris Hill. (*Id.*) Cejka further indicates that according to Buffalo National Weather Service doppler radar images, the snow band intensified at 10:01 a.m., with the northern portion of the band extending through the towns of Tonawanda and Amherst as well as the village of Williamsville. (*Id.*) At 11:02 a.m., the axis of heavy snow extended from North Buffalo to Williamsville and Clarence Center. (*Id.*) Cejka concludes that "based upon the observed data, there is factual evidence within the bounds of meteorological certainty that...there was a storm in progress from 10:00 a.m. until at least 12:00 p.m., on January 8, 2015 at the Williamsville Post Office located in the Town of Amherst, New York." (*Id.*)

### *Snow Removal Activities*

Don Rosenberg worked as a custodial engineer at the Williamsville Post Office on January 8, 2015 from 6 a.m. to approximately 2:30 or 3:00 p.m. (Dkt. No. 25-1, pgs. 37-38) Rosenberg's duties included snow and ice removal as well as salting the

sidewalks and entranceways of the building. (*Id*. at 39) His snow and ice removal duties did not extend to the parking lot. (*Id*. at 41) Instead, a plow company was tasked with clearing the parking lot. (*Id*.) Depending on the conditions, the company would sometimes salt and plow, sometimes only plow and sometimes only salt. (*Id*. at 45) During the winter months, Rosenberg regularly inspected the sidewalks and entranceways for snow and ice upon his arrival to work in the early morning. (*Id*. at pgs. 40-41) On January 8, 2015, Rosenberg cleared and salted the sidewalks in front of the Williamsville Post Office sometime between his arrival to work at 6:30 a.m. and when the building opened to the public at 9:00 a.m. (Dkt. No. 25-1, ¶21, pgs. 42-44) During his deposition, Rosenberg testified that sometimes when he cleared the sidewalk of snow and ice, water from the snow and ice would drip from the sidewalk into the parking lot. (Dkt. No. 25-1; pg. 48)

## DISCUSSION

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. A genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "[V]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991); *see also Matsushia Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (summary judgment is appropriate when "the record as a whole could not lead a rational trier of fact to find for the non-moving party"). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011); *see also Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2007) (an issue of fact is considered "material" if it "might affect the outcome of the suit under the governing law").

In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). Importantly, a court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). However, a party cannot defeat a motion for summary judgment by relying upon conclusory statements or mere allegations. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

### *Negligence and the Federal Tort Claims Act*

Pursuant to the Federal Tort Claims Act, the United States has consented to be sued for negligence of its employees in circumstances where, if the United States were a private person, it would be liable to a plaintiff under the laws of the place where the negligence occurred. *See* 28 U.S.C. § 1346(b)(1). Accordingly, the present case is governed by the substantive law of New York. In order to prevail on a negligence claim in New York, a plaintiff must prove that: (1) defendant owed him a duty of care, (2) defendant breached that duty, and (3) plaintiff was injured as a result of the breach.

7

*Holland v. United States*, 918 F. Supp. 87, 89-90 (SDNY 1996); *see also Japan Airline Co., Ltd. v. Port Authority of New York and New Jersey*, 178 F.3d 103 (2d Cir. 1999). A property owner has a duty to maintain his or her property in a reasonably safe condition in view of all the circumstances. *Basso v. Miller*, 40 N.Y.2d 233 (1976); *Holland*, 918 F. Supp. at 90 ("The rule is that the owner of a store must exercise reasonable care that his customers shall not be exposed to danger through conditions in the store or at an entrance which he invites the public to use.") (internal citations and quotations omitted). To establish a breach of this duty, a plaintiff must prove: "(1) that a dangerous condition existed; and (2) that defendant either created the dangerous condition or that it had actual or constructive notice of its existence." *Feigles v. Costal Lumber Co.*, 32 F. Supp. 2d 109 (WDNY 1998); *accord Dapp v. Larson*, 240 A.D.2d 918, 919 (3d Dep't 1997).

Here, the United States contends that it is entitled to summary judgment because: (1) it had no duty to plaintiff since a snow storm was in progress at the time of his fall; (2) it did not have actual or constructive notice of any dangerous condition; and (3) there is no evidence in the record that any snow removal activities by its employees created a dangerous or hazardous condition. For the reasons set forth in detail below, the Court recommends that summary judgment be entered in favor of the United States and the complaint be dismissed.

### *Storm in Progress Doctrine*

In New York, a property owner is under no duty to remove snow and ice while a storm is in progress. *Joseph v. Danice Stores of Nostrand Ave., Inc.*, 290 A.D.2d 536 (2d Dep't 2002). Instead, the "storm-in-progress doctrine" provides that "a landowner

has a reasonable time in which to address a storm-related snow or ice condition on its property subsequent to the cessation of the storm and is not required to take any corrective actions while a storm is still in progress." *Reynolds v. Sead Development Group*, 257 A.D.2d 940 (3d Dep't 1999). The purpose of the doctrine is "to relieve the worker(s) of any obligation to shovel snow while continuing precipitation or high winds are simply re-covering the walkways as fast as they are cleaned, thus rendering the effort fruitless." *Powell v. MLG Hillside Associates, L.P., et al*, 290 A.D.2d 345 (1st Dep't 2002). Evidence of a storm in progress presents a *prima facie* case for dismissal of a negligence claim as a matter of law, and "such evidence is especially persuasive when based upon the analysis of a licensed meteorologist." *Id.* at 345; *Tillman v. J. DeBenedictis & Sons Building Corp.*, 237 A.D.2d 593 (2d Dep't 1997) (defendant could not be held liable for the hazardous condition caused by ice on his property where an affidavit prepared by a licensed meteorologist indicated that the accident in question occurred while the storm was still in progress). A defendant asserting the storm-in-progress doctrine at the summary judgment stage must show "prima facie entitlement to judgment based on that defense and, if that burden is met, the opponent of the motion must come forward with competent, admissible evidence establishing the existence of a triable issue of fact." *Sanders v. Wal-Mart Stores, Inc.*, 9 A.D.3d 595 (3d Dep't 2004).

Here, the United States has put forth evidence that a snow storm was in progress when plaintiff fell in the Williamsville Post Office parking lot on January 8, 2015 at approximately 10:25 a.m. Indeed, pictures taken by plaintiff of the accident scene depict snow flurries falling from the sky and a light accumulation of snow on both the ground where he fell and his vehicle. Likewise, Berger's accident report describes the

9

weather and surface conditions at the time of the accident as "snow".  The report also indicates that snow contributed to the accident and that there had been a "light snow" between the plowing of the parking lot in the early morning and the time of plaintiff's fall. Most significantly, the information in the photographs and accident report is corroborated by the expert opinion of Michael Cejka, a broadcast meteorologist with extensive experience in the analysis and forecasting of Western New York weather.  In preparing his expert report as to the weather conditions at the time of plaintiff's fall, Cejka thoroughly analyzed observational data from the Buffalo Airport, located less than three miles from the Williamsville Post Office.  He also reviewed statements by the Buffalo National Weather Service and doppler radar images from January 8, 2015 that demonstrated an intense, ongoing snow band over the Williamsville Post Office and surrounding areas between 10:00 a.m. and 12:00 p.m.  Based on the totality of this evidence, the United States has demonstrated an entitlement to judgment as a matter of law pursuant to the storm-in-progress doctrine.  *See Marchese v. Skenderi*, 51 A.D.3d 642 (2d Dep't 2008) (storm-in-progress doctrine precluded recovery where the deposition testimony of plaintiff and the affidavit of a meteorologist submitted by defendant established a *prima facie* case that it was snowing at the time of the occurrence); *Feigles*, 32 F. Supp. at 113 (defendant, who submitted a report by a meteorologist explaining that there was approximately two inches of snow and ice on the ground at the time of the incident and that the accumulation that day was the result of an ongoing event which began the day before and continued through the day of the incident, was entitled to summary judgment because defendant owned no duty to plaintiff to clear the snow prior to plaintiff's accident).

10

The Court rejects plaintiff's contention that a genuine issue of material fact exists as to whether a storm was in progress at the time of his fall.  To begin, testimony from the individuals and employees present at the time of the accident is consistent with Cejka's expert report and the contemporaneous documentary evidence.   During his deposition, Sobieraj initially testified that he "didn't believe" it was snowing when he arrived at the Williamsville Post Office.  It is certainly possible, based upon his testimony and the other evidence in the record, that it was not actively snowing when Sobieraj arrived at the post office, but that it began to snow while he was inside the building and before he fell.  It also may be the case that, at the time of his deposition, Sobieraj did not clearly remember whether it was snowing when he arrived at the Williamsville Post Office.   Regardless, when presented with pictures he took of the accident scene immediately after his fall, Sobieraj admitted that there was snow falling from the sky and a light accumulation of snow on the ground and on his vehicle.[5]   Similarly, Berger testified, during her deposition, that her recollection of the weather conditions that day was based upon her accident report and not her independent memory of the events. Her report described the weather and surface conditions at the time of the accident as "snow" and expressly stated that there had been a "light snow" before Sobieraj's fall. Indeed, both Sobieraj's photographs and Berger's accident report, which are contemporaneous descriptions of the weather conditions at the time of the accident, corroborate Cejka's conclusions that it was snowing at the Williamsville Post Office at the time of plaintiff's fall.   Moreover, both Berger and Sobieraj acknowledged the accuracy of the report and the photographs during their depositions.   Thus, the Court

---

[5] The Court also notes that one of the pictures shows a smear or slip-mark in the snow next to the tire of plaintiff's vehicle and a grouping of footprints.  This mark appears to show the exact location of plaintiff's fall.  (Dkt. No. 23-1, Exh. 3)

11

does not find a conflict between the expert weather report, the testimony of the witnesses, and the contemporaneous documentary evidence in the record. *See e.g., Malick v. J.P. Morgan Chase Bank, N.A.*, 3:13-cv-00669, 2016 U.S. Dist. LEXIS 64285 (D. Conn. 2016) (at the conclusion of a bench trial, the court rejected plaintiff's "self-serving testimony" which was "belied by contemporaneous documentary evidence which [plaintiff] did not otherwise refute during trial.")

Likewise, the Court rejects plaintiff's argument that Cejka's expert opinion is not accurate because he relies on data from the Buffalo Airport and not the Williamsville Post Office. In his report, Cejka specifically notes that the distance between the Williamsville Post Office and the Buffalo Airport is 2.6 miles. He then explains that because of this close proximity, the weather conditions at the Buffalo Airport would be highly representative of conditions at the accident site. More importantly, Cejka did not rely exclusively on data from the Buffalo Airport. He also considered multiple Special Weather Statements by the Buffalo National Weather Service, issued shortly before, during and right after the accident. These Special Weather Statements described a lake effect snow band affecting all of Amherst, Clarence and Williamsville. Further, Cejka studied doppler radar images from the morning of the accident. These images showed an intense snow band over the location of the Williamsville Post Office between 10:01 a.m. and 11:02 a.m., when plaintiff's fall occurred. Considering the scope and variety of data relied upon, the Court finds Cejka's opinion accurate and persuasive as to the presence of a snow storm at the Williamsville Post Office between 10:00 a.m. and 12:00 p.m. on January 8, 2015. *See Lopez v. Picotte Cos.*, 223 A.D.2d 823, 824, (3d Dep't 1996) (although defendant's meteorologist based his conclusions upon

"observations made at Albany County Airport, located a few miles from defendant's property," the court noted that the meteorologist's "report further indicated that the precipitation was widespread, covering several counties including Albany County"); *Campagnano v. Highgate Manor of Rensselaer, Inc.*, 299 A.D.2d 714, 715 (3d Dep't 2002) (finding that defendants "satisfied their prima facie burden of proving that there was a storm in progress at the time of the incident" where their meteorologist opined that a storm was in progress "within a reasonable degree of meteorological certainty" and the affidavit summarized the meteorological data on which he relied).  Furthermore, plaintiff has failed to submit an expert report in support of his claim that there was no storm in progress at the time of his fall.  Thus, there is no scientific evidence in the record to contradict Cejka's opinion that a storm was in progress at the time of plaintiff's fall.

Further, the Court finds the instant matter to be distinguishable from other cases in this District which denied summary judgement based on the storm in progress doctrine and, in doing so, rejected an expert meteorologist's opinion as to weather conditions at the time of an accident based upon data from the Buffalo Airport.  For example, in *Raimond v. United States*, the Court found that the expert's opinion failed to establish, as a matter of law, that a storm was in progress at the exact time and location of plaintiff's fall.  02-CV-0620, 2004 U.S. Dist. LEXIS 32466 (WDNY Sept. 21, 2004) The Court specifically noted that the expert "failed to state that his conclusions were based on a reasonable degree of meteorological certainty [and] [m]ore importantly…did not expressly state that the storm conditions observed at the Airport extended throughout the Buffalo area or that a storm was in progress at the [accident site]." *Id.*

Unlike the report in *Raimond*, the expert report here *does indicate* that there is factual evidence of a storm in progress "within the bounds of meteorological certainty". Moreover, the report offered here thoroughly explains how observational data, combined with statements from the Buffalo National Weather Service and doppler images, show that a storm was in progress not just at the Buffalo Airport, but also throughout Amherst, Williamsville and Clarence during the relevant time period. Further, in *Raimond*, the Court noted that the expert's report was contradicted by plaintiff's testimony that there was no snow on his car when he retrieved it immediately before his fall. *Id.* Conversely here, Sobieraj acknowledged during his deposition that the pictures he took immediately after reporting the fall show snow on his car, on the ground, and falling from the sky. Similarly, in *Olejniczak v. E.I. Du Pont De Nemours & Co.*, the Court denied summary judgment in favor of defendant based on the storm-in-progress doctrine, where the expert report described weather conditions at the Buffalo Airport, located in the town of Cheektowaga, and the accident occurred in the town of Tonawanda. 998 F. Supp. 274, 28-81 (WDNY 1997). Differently here, Cejka's expert report analyzes the weather conditions throughout Amherst, Williamsville and Clarence and therefore specifically includes the location of plaintiff's fall.

Finally, the Court rejects plaintiff's contention that the storm in progress doctrine does not apply because the photographs taken by Sobieraj after his fall do not depict a snow storm, but instead merely the presence of snowflakes and light precipitation. Here, the scientific evidence reflects that, at the time of the accident, there were very cold temperatures and active snow fall. Photographs of the accident site reveal a light snow fall, enough to result in accumulation on the ground and plaintiff's vehicle. These

conditions rise to the level of a storm in progress under the law, such that defendant did not have a duty to clear the area around the Williamsville Post Office of snow and ice until those conditions ceased. Indeed, the storm-in-progress doctrine is not limited to situations where blizzard conditions exist, but also applies to other instances, like here, of less severe, but still inclement weather. *Olejniczak v. E.U. Du Pont De Nemours and Co.*, 79 F. Supp. 2d 209, 216-17 (WDNY 1999). *See e.g., Micheler v. Gush*, 256 A.D.2d 1051 (3d Dep't 1998) (summary judgment granted and complaint dismissed because landowner was not obligated to remove ice in the midst of falling temperatures and freezing rain); *Alvardo v. Wegmans Food Market, Inc.*, 134 A.D.3d 1440, 1441 (4th Dep't 2015) (affirming trial court's decision to grant summary judgment in case involving slip and fall on snow and ice because "evidence that it was only snowing lightly at the time of the accident does not render the storm in progress doctrine inapplicable."); *Zima v. North Colonie Cent. Sch. Dist.*, 225 A.D.2d 993 (3d Dep't 1996) ("[A]lthough it is clear that no major winter storm occurred at the time of the accident, the undisputed proof sufficiently establishes the existence of an ongoing hazardous weather condition that defendant was under no obligation to correct until a reasonable time after it had ended.").

In sum, the evidence in the record reflects that there was a storm in progress when plaintiff slipped and fell in the parking lot of the Williamsville Post Office on January 8, 2015. There is no evidence in the record that raises a triable issue of fact as to the existence of a snow storm at that time. For these reasons, the Court

recommends that defendant's motion for summary judgment be granted based upon the storm-in-progress doctrine.[6]

### Defendant's Snow and Ice Removal Activities

Plaintiff contends that even if the storm-in-progress doctrine were to apply here, there remains a question of fact as to whether defendant's snow and ice removal activities created a hazardous condition, making summary judgment inappropriate. New York courts have concluded that "[s]now or ice removal undertaken during a storm may be actionable if performed negligently, i.e., the removal either creates a hazardous condition or exacerbates the naturally hazardous condition created by the storm." *Joseph*, 290 A.D.2d at 536-37. Courts reason that "once a property owner undertakes to remove the snow or ice from the sidewalk, he or she must do so with reasonable care, and liability may result if it is shown that they made the sidewalk more hazardous." *Friedman v. Stauber*, 18 A.D.3d 606, 607 (2d Dep't 2005). *See also Smith v. United Ref. Co. of Pa.*, 148 A.D.3d 1733 (4th Dep't 2017) ("Where, as here, a defendant has undertaken snow removal efforts during a storm, the relevant inquiry becomes whether the defendant's efforts either created or exacerbated a hazardous condition.") However, conclusory allegations that a defendant's snow removal operations created or increased a dangerous snow-related hazard are insufficient to impose liability. *Espinal v. Melville Snow Contrs.*, 98 N.Y.2d 136, 142 (2002).

Here, plaintiff has failed to raise a genuine issue of material fact as to whether defendant's snow or ice removal activities created or exacerbated a dangerous condition which resulted in Sobieraj's fall. There is evidence in the record that, on

---

[6] Because the Court recommends that summary judgment be granted based upon the storm-in-progress doctrine, the Court does not reach defendant's argument that it did not have actual or constructive notice of a hazardous condition.

16

January 8, 2015, Rosenberg cleared and salted the sidewalks in front of the Williamsville Post Office sometime between his arrival to work at 6:30 a.m. and when the building opened to the public at 9:00 a.m.  Rosenberg generally testified that sometimes his snow removal efforts on the sidewalks and entranceways could cause water to fall or drip into the parking lot.  However, there is no evidence in the record that any water actually fell or dripped into the parking lot on the morning of January 8, 2015. Furthermore, even if there was evidence that snow or water dripped into the parking lot on the day in question, there is no evidence that this water froze and caused the formation of ice or any other dangerous condition resulting in Sobieraj's fall.  In fact, the record is wholly devoid of evidence that any actions by defendant created a dangerous condition which caused Sobieraj to fall.  Thus, plaintiff's contention that Rosenberg's "snow removal operations during the alleged storm exacerbated the dangerous condition on the premises" is based on speculation, and insufficient to defeat the motion for summary judgment.  *See e.g., Mangieri et al. v. Prime Hospitality Corp.*, 251 A.D.2d 632 (2d Dep't 1998) (complaint dismissed where plaintiffs failed to raise a triable issue of fact that the shoveling or plowing operations allegedly undertaken by the defendants prior to the cessation of the storm either created a hazardous condition or exacerbated the naturally hazardous condition created by the storm); *Marrone v Verona*, 237 A.D.2d 805 (3d Dep't 1997) (where there was no evidence that a buildup of snow from defendant's plowing activities actually caused plaintiff's fall, or that the plowing or shoveling otherwise created or aggravated a hazardous condition in the area where she fell, defendant's motion for summary judgment should have been granted); *Micheler v. Gush*, 256 A.D.2d 1051, 1052 (3d Dep't 1998) ("Although liability can ensue when a

landowner has affirmatively created or exacerbated a hazardous condition (as, for example, where remedial efforts have actually increased the danger), there is no indication in this record that defendant took any affirmative action whatsoever that caused or contributed to the buildup of ice.")

Lastly, during oral argument, plaintiff's counsel argued that there is also a question of fact as to whether Sobieraj slipped on "underlying" ice on either the sidewalk or parking lot that was present before the start of the storm and which defendant failed to remedy. The undisputed evidence in the record indicates that Rosenberg cleared and salted the sidewalk and entranceway between 6:30 a.m. and 9:00 a.m. and that the parking lot itself was also plowed and salted that morning, prior to Sobieraj's accident. There is simply no evidence in the record that plaintiff slipped on ice that formed before the storm and plaintiff's argument to that effect is pure conjecture. "Conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). *See also Zima*, 225 A.D.2d at 993 ("[A]lthough plaintiffs argue that defendant failed to completely cover the sidewalk with salt, this fact, even if true, does not establish defendant's liability since the failure to get all the snow and ice off the walk is not negligence.").

## CONCLUSION

For the foregoing reasons, the Court recommends that defendant United States' motion for summary judgment (Dkt. Nos. 21-24) be granted, and that plaintiff Walter Sobieraj's complaint be dismissed.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See*  Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." *Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

DATED:      March 10, 2020
            Buffalo, New York


HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge